# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

QUEENSRIDGE TOWERS, LLC,

               Plaintiff,

vs.

ALLIANZ GLOBAL RISKS US INSURANCE COMPANY,

               Defendant.

Case No. 2:13-cv-00197-JCM-PAL

**ORDER**

(Motion to compel - Dkt. #22)

      Before the court is Defendant's Motion to Compel Production of Documents, New Responses, New Answers to Interrogatories (Dkt. #22). The court has considered the Motion, Plaintiff's Opposition (Dkt. #29), Defendant's Reply (Dkt. #33), and the arguments of counsel at a hearing conducted January 21, 2014. Marc Derewetzky and Hashem Karoum appeared on behalf of the Plaintiff, and Justin Hepworth, Kirk Zapp, and Eric Shukis appeared on behalf of the Defendant.

## BACKGROUND

      The Complaint in this case was filed in state court and removed (Dkt. #1) February 6, 2013. Plaintiff has asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the Nevada Unfair Claim Handling Act. Queensridge is the owner of a luxury condominium development in Las Vegas, Nevada. Complaint, ¶4. Allianz issued a contractor's installation/builder's risk policy to Queensridge for the period from June 30, 2005, to April 30, 2008, which was later extended to March 31, 2009. *Id*., ¶¶5, 6. The project was built with aluminum-framed windows and sliding doors with insulating glass units. *Id*., ¶7. During the policy period, scratched glass was noticed on a number of the windows and sliding doors. *Id*., ¶8. Queensridge submitted a

claim to Allianz for the scratched glass and estimated the cost of repair to be several million dollars. *Id*., ¶9. Allianz denied coverage for the cost of repairing the scratched glass. *Id*., ¶10.

Defendant's Motion to Compel seeks an order compelling Plaintiff to: (1) produce all responsive documents; (2) verify the completeness of its production; (3) provide new responses to all of the requests for production of documents; (4) identify documents used to answer interrogatories with sufficient specificity to allow Allianz to identify and locate those documents and compel Queensridge to produce these documents; and (5) amend its Answers to Interrogatories Nos. 2 through 13, and 15 through 18. Plaintiff's fifty-one page motion substantially exceeds the thirty page limitation on the length of briefs allowed by LR 7-4, and is supported by nearly 500 pages of supporting affidavits and exhibits. Allianz filed a twenty-five page response supported by an additional 320 pages of supporting declarations and exhibits. Queensridge's reply is a mere twenty-one pages supported by an additional twenty-five pages of exhibits.

## I.     The Parties' Positions.

### A.     Allianz's Motion to Compel.

The court lacks the time and resources to exhaustively summarize the parties' arguments, systematically cite to the moving and responsive papers, and issue a publishable quality order deciding the parties' multiple discovery disputes. In a nutshell, Allianz accuses Queensridge of engaging in a document dump of in excess of one million pages of construction files. Allianz also argues Queensridge failed to meet its discovery obligations by responding to discovery requests that the answers are somewhere among the 20,000 pages of documents Queensridge has produced, will produce, or is producing, and/or in somewhere in a million pages of construction project documents turned over by the general contractor, Perini, prior to litigation.

Allianz contends that Plaintiff's answers to interrogatories and responses to requests for production refer to documents so generally and vaguely that it cannot locate the documents in which the answers are purportedly located. Allianz argues it is entitled to sufficient detail to locate and identify documents as readily as the Plaintiff. Allianz also argues that most of the Plaintiff's answers to interrogatories are evasive, incomplete and non-responsive. Allianz claims Plaintiff is attempting overwhelm it with a document dump without specifying which documents are responsive to which

1 requests. As the party familiar with its own documents, Queensridge has the burden of identifying which documents are responsive to which requests, and may not merely produce the entire universe of potentially responsive documents.

Allianz contends that Queensridge must organize and label documents to correspond with document requests. Rule 33(d) permits documents to be produced as they are maintained in the ordinary course of business. However, the producing party is still responsible for producing an appropriate index and references to documents corresponding to specific requests. The documents in this case are not maintained in the ordinary course of business. Rather, the documents consist of "piles of boxes" stored in a warehouse. The warehouse documents are co-mingled with documents and records from non-parties, such as the general contractor, Perini. Queensridge cannot claim that the Perini documents are its own documents, and the document logs that have been produced by Perini and Queensridge are insufficient to comport with Plaintiff's discovery obligations.

### B. Plaintiff's Response.

Queensridge defends its responses to the discovery requests arguing that Defendant initially denied the claim and is now trying to delay the litigation through "scorched earth discovery tactics" and attempting to make this case so expensive that Plaintiff will capitulate and abandon its lawsuit. Queensridge claims that it has provided substantive responses and produced responsive documents. Queensridge produced documents in plainly labeled sets and in separate electronic folders for electronically stored documents from which Allianz should easily be able to determine which documents are responsive to which requests. Queensridge argues that the central dispute involved in this motion is who, if anyone, will be required to conduct a review of 400 boxes of documents produced by Perini to Queensridge in separate litigation where scratched glass was not an issue. Queensridge asserts it is in no better position than Allianz to review these documents. Queensridge has already produced all of the documents that support its claims and the benefit of requiring Queensridge to review and produce responsive documents from the documents in storage is outweighed by any likely benefit the review may glean.

In this case, Allianz denied the claim concluding that scratch damage was caused by debris trapped in the cleaning tools during window washing for which there was no coverage based on a faulty

workmanship exclusion in the policy. Queensridge maintains that the dispute about whether this exclusion applies is a pure legal question. Queensridge disputes that the damage was caused by window cleaning because the window washers noticed the windows were scratched before cleaning. However, Queensridge argues it is not its burden to show how the windows were scratched, only that they were damaged during the course of construction. The General Contractor, Perini, produced approximately 400 boxes of documents in mechanics lien claims litigation related to this project. Perini produced the entire project file in that case along with an index of the 400 boxes. Queensridge did not review the documents because it felt most of them were not relevant to the lien claims. Allianz issued a subpoena duces tecum to Perini to obtain the documents which were nearly identical to the requests for production served on Queensridge. Perini objected to the subpoena duces tecum, but indicated the documents were in Queensridge's possession, turned over an index of the contents, and offered to make them available for inspection and copying. Queensridge asserts that the documents are kept exactly as they have been placed in a Queensridge storage facility the way they were received from Perini.

There is no reason to review these boxes of construction documents because prior to litigation, Queensridge conducted a survey of every glass surface on the project and provided the survey along with photos to Allianz. Queensridge reproduced the survey and photos in its Rule 26 disclosures in this case and has provided Allianz with all of its field observation reports associated with scratch damage. These detailed reports, it is argued, contain a listing of all of the scratched windows, the date of the examination, the issue or problem noted, and photos and a narrative description of the damage. Allianz also retained an expert who inspected the project prior to litigation and its expert prepared an extensive report. Queensridge asserts that there are more than 900 windows on this project, and that there is no way for the Plaintiff to identify a particular cause for the damage to each window. Moreover, it is not Plaintiff's burden to prove the cause of damage, only whether damage occurred during the course of construction which triggers coverage under the Allianz policy.

Finally, Queensridge argues the interrogatories are overbroad on their face by using omnibus terms such as "any and all documents", "without limitation", "any communications", and "relating to or regarding". Queensridge has produced documents which provide the answer to all of Allianz's

/ / /

1  discovery requests and its Rule 33(d) responses are adequate where, as here, the burden of deriving or
2  ascertaining the answer will be substantially the same for either party.

3        **C.**      **Allianz's Reply.**

4        Allianz replies that Queensridge knows better than it where responsive documents are located
5  and should not be able to avoid its discovery obligations because it is expensive.  This discovery
6  dispute is not limited to the question of who should have to review the Perini documents.
7  Queensridge's Rule 33(d) responses to interrogatories are inappropriate because the Rule only applies
8  to Queensridge's own business records, not those of non-party Perini.

9        **DISCUSSION**

10        The court has carefully reviewed and considered the voluminous moving and responsive papers
11  and the arguments of counsel at the hearing.  The court finds that the majority of Plaintiff's discovery
12  responses are incomplete, evasive and unresponsive.  Plaintiff's Answers to Interrogatories are prefaced
13  by more than two pages of "general objections and reservations."  Queensridge generally objects to all
14  of the interrogatories on various grounds "to the extent that" the interrogatories impose a burden or
15  obligation greater than the requirements of Rule 33; they are unduly burdensome, harassing, oppressive,
16  and overly broad; not relevant nor reasonably calculated to lead to the discovery of admissible
17  evidence; seek information protected by applicable privilege, trade secrets or confidential proprietary
18  business or commercial information.  In addition, Queensridge generally objects "to the extent that" the
19  requests ask for information that would violate any constitutional, statutory or common law privacy
20  interest of any current or former insured of Queensridge, information known to the propounding party,
21  or any third party.  Queensridge also objects to each and every definition to the extent it is overly broad
22  and burdensome, and to the extent it purports to require Queensridge to respond on behalf of another
23  entity.  Queensridge's general objections go on to state that it does not concede that any of the
24  information is properly discoverable or admissible; it reserves the right to rely on further or different
25  facts or documents or other information which may develop or come to its attention; and responds
26  "without prejudice" to provide additional responses and objections.

27        The general objections conclude with the remark that discovery is continuing and therefore, the
28  interrogatories are premature.  The general objections are followed by a litany of boilerplate objections

for each of the answers to interrogatories and responses to requests for production. Queensridge's Response to Interrogatory No. 4 is typical. The interrogatory refers to an allegation in paragraph nine of the complaint and asks Queensridge to identify when it first gave notice of the loss to Defendant as well as who gave the notice, and when a claim was first submitted for scratched glass damage to windows and sliding doors on the project. Queensridge responded:

> Queensridge incorporates herein each and every general objection set forth above. Queensridge further objects that this interrogatory seeks information that is irrelevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Queensridge further objects that the interrogatory is vague and ambiguous as well as compound and complex. Subject to and without waiving the foregoing objections, Queensridge responds as follows: Perini initially submitted the claim to Allianz on Plaintiff's behalf on or around April 2008.

Queensridge responded to Allianz's document requests in similar fashion. Request for Production No. 1 asked Queensridge to identify "any and all" documents referred to or relied upon by Queensridge to answer Defendant's interrogatories. Queensridge responded:

> Queensridge incorporates herein by reference all of the foregoing general objections. Queensridge further objects that the request is duplicative, overly broad, unduly burdensome, oppressive and harassing insofar as requests for all documents "relied upon" to prepare in interrogatory responses necessarily encompasses each and every document already produced or to be produced in litigation. If the request is intended to seek a subset of documents produced or to be produced, it is vague, ambiguous, and unintelligible. Queensridge further objects to the extent that this request seeks documents the production of which would invade the attorney-client privilege and work-product doctrine and would constitute confidential and proprietary business and trade secret materials. Subject to and without waiving the foregoing objections, Queensridge responds as follows: Queensridge has produced or will produce all reasonably responsive, relevant, and non-privileged documents in its possession, custody or control at a mutually convenient time and place.

The Court finds that a significant number of Queensridge's discovery responses are evasive, incomplete and unresponsive. The responses are particularly evasive, incomplete and unresponsive in light of the litany of "general objections and reservations" followed by lengthy boilerplate objections made to each individual request. The general objections, reservations, and boilerplate objections look like a form provided to the firm's most junior attorney thirty years ago to teach new lawyers how to obstruct discovery. They render any subsequent attempt to substantively respond to discovery requests virtually meaningless especially where, as here, Queensridge "reserves the right to rely on further or different facts or documents or other information which may develop or come to its attention" and purports to provide responses "without prejudice to provide additional responses and objections."

Queensridge responded to a large number of the requests for production of documents by stating that it "has produced or will produce all reasonably responsive, relevant and non-privilege documents in its possession, custody or control at a mutually convenient time and place." This response makes it impossible to tell which documents Queensridge believes are responsive to which request. Queensridge's arguments that it has provided Allianz with all the documents that support its claims for damages in this case are equally unavailing. Rule 26(b) permits discovery of non-privileged matter relevant to a party's claim or a defense. It does not permit a responding party to provide only non-privileged materials supporting the party's claims.

Boilerplate objections or blanket refusals to produce documents do not preserve privilege. *Burlington Northern & Santa Fe Ry. Co. v. United States District Court for the District of Montana*, 408 F.3d 1142, 1149 (9th Cir. 2005). Documents withheld on the basis of privilege require a privileged document log which complies with Rule 26(b)(5)(ii). Queensridge has not served opposing counsel with a privileged document log or other information which would allow opposing counsel or the court to assess the validity of the assertion of unspecified attorney-client, work-product, constitutional, statutory or common-law privacy interests or any other privilege.

Additionally, discovery responses are signed under penalty of Rule 26(g) which provides that by signing a discovery response or an objection, the attorney or party "certifies that to the best of the person's knowledge, information, and belief **formed after reasonable inquiry**", the disclosure is complete and correct as of the time it was made, any response or objection is consistent with the rules, not interposed for an improper purpose, and neither unreasonably nor unduly burdensome or expensive considering the needs of the case, prior discovery, the amount in controversy, and the importance of the issues at stake in the action. Rule 26(g)(1) (emphasis supplied).

Queensridge responded to a large number of the requests for production of documents that it "has produced or will produce all reasonably responsive, relevant and non-privileged documents in its possession, custody or control at a mutually convenient time and place.." This response makes it impossible to tell which documents Queensridge claims are responsive to which request. Again, the evasive, incomplete and unresponsive nature of this response is underscored by the "general objections"

/ / /

that Queensridge "reserves the right" to rely on different documents and different facts which may come to its attention as some unspecified time in the future.

On the other hand, many of the discovery requests are extremely broad and use overbroad impermissible terms like "any and all", "each and every", and "set forth, referred to relied upon". Additionally, Allianz did not attempt to meet and confer further after Queensridge supplemented its answers to interrogatories. Queensridge has produced a great deal of information supporting its claims both before this case was filed, in its initial disclosures and in supplements and explanatory letters and emails. Queensridge produced detailed reports of its construction contractors and consultants, including field observation reports documenting the scratched glass damage and a detailed survey for the damage. In addition Allianz's own experts surveyed the damage before this suit was filed and prepared an extensive report outlining the documents that had been requested from the general contractor and made available for review. Thus, the court does not accept Allianz's arguments that it is as in the dark as it claims, or does not have a fundamental understanding of the nature of the claims or the construction documents its expert had access to and reviewed before this lawsuit was filed.

Allianz served Perini with a subpoena duces tecum nearly identical to the request for production of documents served on Queensridge. Perini served objections to the overbroad subpoena but produced a detailed 117 page index providing a general description of the files by category, for example, "owner pay apps," "payroll records," correspondence" etc., and a more detailed description of the contents of the files by box number. Queensridge also produced a 259 page detailed index of its project files which identify customer box numbers, the source of the documents, the issue, type of document, location of the document and provide a general and extended description of the contents.

The vast majority of the Perini documents and Queensridge documents for the entire project have nothing to do with the parties' insurance coverage dispute over scratched glass on the project. However, the party responding to discovery requests is required to conduct a diligent search for all records in its care, custody and control. The court will impose on Queensridge the obligation to review both indices in a good faith effort to identify which files are likely to contain documents responsive to Allianz's discovery requests identified below. Queensridge is not required to review the vast majority of the documents in storage because it is clear from the description provided in the indices the vast

majority simply have nothing to do with the claims and defenses involved in this litigation. However, the court categorically rejects Queensridge's arguments that it has complied with its discovery obligations by providing only the documents that support its claims.

Allianz is entitled to obtain discovery responses regarding any unprivileged matter relevant to Queensridge's claims or Allianz's defenses, including "the existence, description, nature, custody and control and location of any documents or tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Queensridge may not appropriately respond that the answers to Allianz's questions are somewhere in documents that have been or will be produced. Allianz is also entitled to know which documents are responsive to which responses. Queensridge may respond by describing general categories of responsive documents, eg, "glass check off survey", "field observation reports", and binder of documents compiled by consultant previously produced in correspondence dated..." Queensridge need not Bates stamp its documents or other documents in its care, custody, or control, as long as the response is adequate to permit Allianz to identify and locate which documents Queensridge alleges are responsive to which requests.

Having reviewed and considered the voluminous moving and responsive papers and arguments of counsel,

**IT IS ORDERED** Allianz's Motion to Compel (Dkt. #22) is **GRANTED in part** and **DENIED in part** as follows:

1. The motion is granted to the extent all of Queensridge's general objections and reservations, and boilerplate objections to each individual discovery request are **STRICKEN**.

2. Queensridge shall have until **February 21, 2014** in which to serve Allianz with a privileged document log which fully complies with Rule 26(b)(5) for any responsive document withheld from production on the basis of privilege. The log shall describe "the nature of the documents, communications, or tangible things not produced or disclosed–and do so in such a manner, that without revealing information itself privileged or protected," will enable Allianz to assess the validity of the assertion of the claim. Fed. R. Civ. P. 26(b)(5)(ii).

3. Queensridge shall have until **February 25, 2014** in which to supplement answers to the following interrogatories:

A. Answer to Interrogatory No. 3. Queensridge responded that it was unknown whether the damage identified in the 2006 documents involve the same damage Queensridge is claiming in this law suit. The supplemental answer to this interrogatory shall clarify whether the damage is or is not being claimed in this law suit and whether Queensridge is claiming damages for pre-installation damage, post-installation damage or both.

B. Answer to Interrogatory No. 7. Queensridge was asked to identify the persons who washed or cleaned the exterior and interior windows and sliding glass doors and insulating glass. Queensridge objected and responded that "to the extent the information requested exists, it may be found in the documents that have been or will be produced to the defendant in this action." Queensridge shall specify what documents are responsive to this request by categories sufficient to allow Allianz to locate and identify them as readily as Queensridge could. Queensridge shall certify that a diligent search for all responsive documents has been made and that all responsive documents have been produced.

C. Interrogatory No. 10 asked Queensridge to identify "any and all" windows and sliding doors that were replaced and/or repaired as a result of scratch damage, the date of replacement or repair, and the cost incurred to replace or repair. After objection Queensridge responded that it was unaware whether Perini or Giroux Glass replaced windows, sliding glass, and IGUs; that it replaced an as-yet undetermined number of panes, and was attempting to locate records relating to glass replacement from its former partners and glass vendors. Queensridge shall supplement its answer to this interrogatory to provide specific and detailed information responsive to this request. Queensridge may respond to this request by specifying the records from which the answers may be derived, as long as the response contains sufficient detail to enable Allianz to locate and identify the documents as readily as Queensridge, and the documents contain the information requested to the extent it exists.

D. Interrogatory No. 13 asks Queensridge to provide a computation of damages for each category of damages sought in the complaint, the amount of damages claimed for each

                category of damages, the basis for the computation and a description of the nature and extent of the loss claimed. Queensridge objected and responded that it had not completed discovery or preparation for trial and therefore could not respond. However, it provided some information about the estimated cost to replace scratched windows. It also responded that it had incurred attorneys fees and costs which are currently unknown but exceed $10,000 and that discovery and litigation was ongoing and it reserved the right to amend its response. Queensridge shall provide a full and complete response to this interrogatory by providing a detailed computation of damages by category and amount for which recovery is sought in this lawsuit along with the basis on which the computation was made.

      E.      Interrogatory No. 17 requested Queensridge to identify "all facts" and describe how Allianz violated N.R.S. 686A.310(c) and failed to adopt and implement reasonable standards for the prompt investigation and processing of claims. Queensridge objected and provided a generic response that Allianz unreasonably delayed responding to the claim and that Allianz either violated its own internal standards or that it had no such standards, and that Queensridge had not yet completed its discovery. Queensridge need not provide "all facts" which support this complaint allegation. However, it must provide a detailed response if it has any facts supporting its claims Allianz violated its own internal standards, or N.R.S. 686A.310(c). If it has no facts supporting these allegations it must plainly state so.

   4.      The motion is granted to the extent Queensridge shall have until **February 25, 2014** to supplement its responses to request for production Nos. 1, 2, 5, 6, 7, 8, 10, 11, 12, 13, 16, 21, 24, 26, 31, 32, 35, 40, and 43 as follows:

      A.      The supplemental responses shall contain the certification under penalty of Rule 26(g) that Queensridge has conducted a diligent search of all of its own records, and records in its care, custody, and control, including the Perini documents, for responsive documents.

      B.      The supplemental responses shall specify what documents, by category or other description, are responsive to which requests sufficient to allow Allianz to locate and

identify them as readily as Queensridge could.

C. Queensridge shall produce a privileged document log which fully complies with Rule 26(b)(5) for any responsive documents withheld on the basis of privilege.

D. Failure to timely comply with this order may result in the imposition of any sanctions authorized by Rule 37(b) & (c).

Dated this 4th day of February, 2014.

_____
Peggy A. Leen
United States Magistrate Judge