1

2

3

4

5

6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7

8

9

10

11

12

QUEENSRIDGE TOWERS, LLC,

                        Plaintiff(s),

        v.

ALLIANZ GLOBAL RISKS US INSURANCE
COMPANY,

                        Defendant(s).

Case No. 2:13-CV-197 JCM (PAL)

ORDER

13

14

15

16

17

        Presently before the court is defendant Allianz Global Risks US Insurance Company's (hereinafter "defendant") motion for summary judgment.  (Doc. # 68).  Plaintiff Queensridge Towers LLC (hereinafter "plaintiff") filed a response, (doc. # 71), and defendant filed a reply, (doc. # 76).

18

19

        Also before the court is plaintiff's motion for summary judgment.  (Doc. # 69).  Defendant filed a response, (doc. # 70), and plaintiff filed a reply, (doc. # 74).

20

21

22

        Also before the court is plaintiff's motion to strike defendant's statement of undisputed facts attached to its motion for summary judgment.  (Doc. # 72).  Defendant filed a response, (doc. # 77), and plaintiff filed a reply, (doc. # 79).

23

24

25

        Also before the court is plaintiff's motion to strike defendant's statement of additional material facts attached to its response to plaintiff's motion for summary judgment.  (Doc. # 75).  Defendant filed a response, (doc. # 82), and plaintiff filed a reply, (doc. # 75).

26

27

28

        Also before the court is defendant's motion to strike plaintiff's unsupported statements of fact in its motion for summary judgment and its response to defendant's motion for summary

James C. Mahan
U.S. District Judge

1  judgment.  (Doc. # 78).  Plaintiff filed a response and errata, (docs. # 83, 84), and defendant filed

2  a reply, (doc. # 87).

3       Finally before the court is plaintiff's motion to exclude expert testimony.  (Doc. # 80).

4  Defendant filed a response, (doc. # 86), and plaintiff filed a reply, (doc. # 88).

5  **I.    Background**

6       Plaintiff developed and owns a luxury condominium development in Las Vegas, Nevada.

7  (Doc. # 1).  Plaintiff contracted with defendant for builder's risk insurance coverage.  (Doc. # 1).

8  Plaintiff is the named insured on the policy.  (Doc. # 68-2).  General contractor Perini Building

9  Company ("Perini") is listed as an additional insured.  (Doc. # 68-2).

10      The policy includes a provision for "requirements in case of loss," which specifies:
    *In the event of loss or damage to Insured Property the Insured shall*
11      *A       Give immediate notice thereof to the Company,*

12      *B       Protect the Insured Property from further loss or damage,*

13      *C       Within ninety (90) days from the date of discovery of the loss or damage,*
        *render a statement to the company signed and sworn to by the insured*
14      *stating the knowledge and belief of the Insured as to the time and cause of*
        *the loss or damage and the interest of the Insured and all others in the*
15      *Insured Property . . . .*

16  (Doc. # 68-2).   Pursuant to the policy's definitions section, "the company" refers to

17  defendant.  (Doc. # 68-2).

18      The policy also includes an "action against company" provision, which states:

19      *No suit, action, or proceeding against the Company for the recovery of any claim*
        *under this Policy shall be sustainable in any court of law or equity, unless the*
20      *same be commenced within twelve (12) months of the discovery by the Insured of*
        *the loss or damage which gives rise to the claim . . . .*
21

22  (Doc. # 68-2).

23      Additionally, the policy lists a number of exclusions, specifying in relevant part:

24      *This policy does not insure . . . [t]he cost of making good faulty or defective*
        *workmanship, material, construction, designs, plans and/or specifications unless*
25      *direct physical loss or direct physical damage not otherwise excluded under this*
        *Policy ensues and then this Policy will cover such ensuing loss or damage only*
26      *. . . .*

27

28  (Doc. # 68-2).

James C. Mahan
U.S. District Judge                                    - 2 -

1    Finally, the policy's "deductibles" provision states:

2

3    *Each loss shall be adjusted separately and from the amount of each adjusted loss the amount as stated below shall be deducted.*

4

5    (Doc. # 68-2).   This provision identifies the relevant deductibles for land movement,

6    water damage, and all other perils "per occurrence."   (Doc. # 68-2).

7    During the policy period, Perini discovered scratches on glass windows installed at the

8    property.  (Doc. # 1).  Perini informed plaintiff of this damage on October 11, 2007.  (Doc. # 68-

9    17).   Perini provided a "First Notice of Loss" to defendant on April 29, 2008.   (Doc. # 69).

10   Plaintiff later filed a claim seeking to recover several million dollars for the cost of glass damage

11   from defendant.  (Doc. # 1).

12   Defendant hired an expert to investigate the claim, and eventually denied the claim on

13   January 9, 2012.  (Doc. # 1).  Defendant concluded that the damage was caused by improper

14   cleaning, which it held to be excluded under the policy's "faulty workmanship" exclusion.  (Doc.

15   # 68).  Defendant also stated that plaintiff's claim was properly denied because plaintiff gave late

16   notice of the loss.  (Doc. # 68).

17   Finally, defendant concluded that the claim was not covered because plaintiff could not

18   prove that each instance of damage exceeded the deductible.  (Doc. # 68).  In its communications

19   with plaintiff and Perini, defendant included a reservation of rights and stated that it was not

20   waiving any defenses by investigating the claim.  (Docs. # 68-13, 68-17).

21   On January 7, 2013, plaintiff sued defendant and various defendants in state court,

22   alleging claims for breach of contract, breach of the implied covenant of good faith and fair

23   dealing, and violations of the Nevada Unfair Claims Practices Act.  (Doc. # 1-1).  Plaintiff

24   contends that the damage at issue was caused by a "swing stage" hitting the windows, and that

25   such a loss is covered under the policy.  (Doc. # 69).

26   Defendant then removed the case to this court on diversity grounds.  (Doc. # 1).  The

27   parties then filed the instant motions.

28    . . .

James C. Mahan
U.S. District Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    Legal Standard

### A.  Motion to strike

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The court may do so "on motion made by a party . . . within 21 days after being served with the pleading."  Fed. R. Civ. P. 12(f)(2).

### B.  Motion to exclude testimony

An expert witness may testify if the expert's "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  A witness must be "qualified as an expert by knowledge, skill, experience, training, or education" and may testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  *Id.*; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 141, 148-49 (1999).

Expert testimony is liberally admitted under the federal rules.  *See Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 588 (1993) (noting that Rule 702 is part of the "liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony") (citation and quotation marks omitted); *see also* Fed. R. Evid. 702 advisory committee notes to 2000 amendments ("[R]ejection of expert testimony is the exception rather than the rule.").

The "trial judge must ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable."  *Daubert*, 509 U.S. at 589.  "[T]he *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to [non-scientific] testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it."  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (citations omitted).

In such cases, the trial court's gatekeeping role under *Daubert* involves probing the expert's knowledge and experience.  *See id.* at 1018.  "It is the proponent of the expert who has

**James C. Mahan**
**U.S. District Judge**

- 4 -

1    the burden of proving admissibility." *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th

2    Cir. 1996).    Admissibility of the expert's proposed testimony must be established by a

3    preponderance of the evidence.  *See Daubert*, 509 U.S. at 592 n.10 (citation omitted).

4         *C.  Summary judgment*

5         The Federal Rules of Civil Procedure allow summary judgment when the pleadings,

6    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

7    any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a

8    judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment

9    is "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S.

10   317, 323-24 (1986).

11        For purposes of summary judgment, disputed factual issues should be construed in favor

12   of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to

13   be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts

14   showing that there is a genuine issue for trial."  *Id.*

15        In determining summary judgment, a court applies a burden-shifting analysis. "When the

16   party moving for summary judgment would bear the burden of proof at trial, it must come

17   forward with evidence which would entitle it to a directed verdict if the evidence went

18   uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the

19   absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage*

20   *Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

21        By contrast, when the non-moving party bears the burden of proving the claim or

22   defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

23   an essential element of the non-moving party's case; or (2) by demonstrating that the non-

24   moving party failed to make a showing sufficient to establish an element essential to that party's

25   case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at

26   323-24.  If the moving party fails to meet its initial burden, summary judgment must be denied

27   and the court need not consider the non-moving party's evidence.  *See Adickes v. S.H. Kress &*

28   *Co.*, 398 U.S. 144, 159-60 (1970).

**James C. Mahan**
**U.S. District Judge**

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

## III.   Discussion

### A.  Motions to strike

The court will first address the parties' three motions to strike, as they relate to the summary judgment filings.

#### i.       Plaintiff's first motion to strike

Plaintiff first moves to strike the statement of undisputed material facts and exhibits attached to defendant's motion for summary judgment.  (Doc. # 72).  Plaintiff contends that these filings exceed the permissible page limit and that a separate statement of undisputed facts is not allowed under the local rules.  (Doc. # 72).  In response, defendant cites numerous cases in this jurisdiction in which courts considered such statements.  (Doc. # 77).

Local Rule 56-1 provides:

> Motions for summary judgment and responses thereto shall include a concise statement setting forth each fact material to the disposition of the motion, which the party claims is or is not genuinely in issue, citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence upon which the party relies.

LR 56-1.  Local Rule 7-4 provides that motions and response briefs shall be limited to thirty pages, not including exhibits.  LR 7-4.

The court does not find grounds to strike defendant's statement of facts.  While portions of defendant's statement of facts may be duplicative, this does not make the statement as a whole immaterial.  Further, Local Rule 7-4 allows the court to permit longer briefs.  LR 7-4.  Local Rule IA 3-1 also provides that "[t]he court may *sua sponte* or on motion change, dispense with, or waive any of these Rules if the interests of justice require."  LR IA 3-1.

James C. Mahan
U.S. District Judge

1    Such a statement of facts is not prohibited simply because the local rules fail to
2    specifically mandate, provide for, or mention it.  As defendant notes, its statement of undisputed
3    facts was included as an attempt to compile citations to assist the court in distilling the
4    information submitted in favor of summary judgment.

5    For the foregoing reasons, the court will not strike defendant's separate statement of
6    undisputed facts.  However, the court will review the evidence and will only consider facts to be
7    undisputed where appropriate.  Plaintiff's first motion to strike will be denied.

8                              ii.      Plaintiff's second motion to strike

9    Plaintiff next moves to strike the statement of additional material facts attached to
10   defendant's response to plaintiff's motion for summary judgment.  (Doc. # 75).  In support of
11   this motion, plaintiff presents the same arguments as it did in its first motion to strike.  (Doc. #
12   75).  Therefore, the court will deny this motion to strike for the same reasons.

13                             iii.     Defendant's motion to strike

14   Defendant moves to strike many statements of fact in plaintiff's motion for summary
15   judgment and plaintiff's opposition to defendant's motion for summary judgment.  (Doc. # 78).
16   Defendant contends that these statements "are not properly supported by citation to particular
17   parts of admissible materials in the record or are improper legal arguments."  (Doc. # 78).

18   Plaintiff responds that defendant's motion is simply another attempt to extend its briefing
19   and that defendant's motion to strike should itself be stricken, as there is no authority to support
20   striking facts from a brief.   (Doc. # 83).   Defendant's motion identifies numerous factual
21   statements that it contends are unsupported, and plaintiff argues in its response that each fact is
22   admissible.  (Docs. # 78, 83).

23   Whether to grant a motion to strike is within the court's discretion.  The court will not
24   strike plaintiff's statements of fact, as they are not "redundant, immaterial, impertinent, or
25   scandalous matter."  Fed. R. Civ. P. 12(f).  However, any inadmissible evidence will be
26   disregarded by the court in considering the instant motions for summary judgment.  Defendant's
27   motion to strike will be denied.

28   . . .

**James C. Mahan**
**U.S. District Judge**

- 7 -

1          *B.  Motion to exclude expert testimony*

2          Plaintiff moves to exclude the testimony, reports, and declarations of defendant's expert

3     Mark K. Schmidt ("Schmidt").  (Doc. # 80).  Plaintiff argues that this evidence is unreliable,

4     lacks foundation, and therefore is not helpful to the trier of fact.  (Doc. # 80).  Plaintiff argues

5     that "[b]ecause he failed to test other potential causes of scratch damage and failed to justify

6     through experience the failure to test, Schmidt's testimony does not approach the threshold of

7     reliability . . . ."  (Doc. # 80).

8          In support of its motion, plaintiff cites numerous facts purporting to show that Schmidt's

9     consideration and testing of possible causes was inadequate.  Plaintiff also submits the testimony

10    of its own expert, who opines that Schmidt's conclusions contradict the relevant evidence in the

11    case.  (Docs. # 69-42, 69-48).

12         Plaintiff claims that Schmidt "did not test his theory under anything even remotely

13    resembling the actual conditions at the project."  (Doc. # 80).  Plaintiff also argues that "[n]o

14    fewer than six witnesses have testified that scratched glass damage at the project was caused by a

15    swing stage . . ." and thus that Schmidt's conclusions were incorrect and unfounded.  (Doc. #

16    80).

17         While plaintiff's criticisms of Schmidt's investigation are lengthy, they do not warrant

18    exclusion of his testimony.  Plaintiff attacks the sufficiency of Schmidt's tests and conclusions,

19    but does not demonstrate how they deviate from any industry standard.  Further, Schmidt's

20    testimony and declarations indicate substantial training and experience related to the

21    investigation in question.  (Docs. # 69-41, 86-1).

22         The evidence shows that Schmidt investigated plaintiff's claim, performed tests to

23    determine the cause of damage, and explained the basis for his findings.  Disagreement over the

24    legitimacy of Schmidt's methodology and conclusions does not warrant exclusion of his

25    testimony.  The court will weigh the credibility of each witness in considering the instant

26    motions.  *See Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (explaining that

27    disputes over methodology or conclusions of an expert affect weight of testimony but do not

28    preclude admissibility).

**James C. Mahan**
**U.S. District Judge**                                          - 8 -

1    Based on the foregoing, the court will deny the motion to exclude expert testimony.  The

2    court will consider all relevant evidence submitted by both parties in ruling on the motions for

3    summary judgment below.

4    *C.  Motions for summary judgment*

5    Both plaintiff and defendant filed motions for summary judgment.  Plaintiff argues that it

6    is entitled to summary judgment on its causes of action for breach of contract, breach of the

7    implied covenant of good faith and fair dealing, and violations of the Nevada Unfair Claims

8    Practices Act.  (Doc. # 69).  Plaintiff believes that its claim was indisputably covered by its

9    insurance policy, and therefore contends that defendant acted in bad faith and violated the act by

10   refusing to settle the claim.  (Doc. # 69).

11   By contrast, defendant argues that it is entitled to summary judgment because (1)

12   plaintiff's suit is barred by the policy's limitations provision, (2) plaintiff's notice was untimely,

13   (3) the damage at issue is excluded under the policy, and (4) plaintiff fails to show that its claims

14   exceed the policy's deductible.  (Doc. # 68).  The court will address the parties' arguments with

15   regard to each of plaintiff's claims as necessary.

16   i.    Breach of contract

17   Plaintiff's policy requires plaintiff to file suit within twelve months of discovery of the

18   loss or damage.  (Doc. # 68-5).  Defendant argues that plaintiff's claim is barred on this basis,

19   because plaintiff discovered the loss in 2007 and did not bring suit until 2013.  (Doc. # 68).

20   As defendant acknowledges, this twelve-month period was tolled between the date that

21   defendant received notice of the damage and the date that defendant denied plaintiff's insurance

22   claim.  *See Clark v. Truck Ins. Exch.*, 598 P.2d 628, 629 (Nev. 1979) (holding that twelve-month

23   limitation period runs from the date of the casualty but is tolled from the time appellant gave

24   notice of the loss until the insurer denied the claim).

25   Defendant contends that, even exempting this time period, plaintiff still did not file suit

26   within 12 months.  (Doc. # 68).  Plaintiff acknowledges that it knew of at least some glass

27   damage as of October 2007.  (Doc. # 71).  Perini informed defendant of the damage on April 29,

28

James C. Mahan
U.S. District Judge

- 9 -

2008.  Defendant denied plaintiff's claim on January 9, 2012.  Plaintiff then filed suit on January 7, 2013.  (Doc. # 1).

Plaintiff claims that it filed its complaint within 12 months of discovery of the loss giving rise to the claim.  (Doc. # 71).  Plaintiff also presents a number of additional arguments, including that the limitation provision is unenforceable under Nevada law.  (Doc. # 71).

a.   Enforceability

Plaintiff argues that the "action against company" provision is unenforceable pursuant to *Grayson v. State Farm Mutual Auto Insurance Company*, 971 P.2d 798 (Nev. 1998).  *Grayson* involved a dispute over underinsured motorist benefits.  *Id.* at 798.  The district court granted summary judgment for State Farm on the grounds that a six-year statute of limitations commenced on the date of the accident and barred plaintiff's claim.  *Id.*

The Nevada Supreme Court then reversed, holding that the statute of limitations for a breach of contract action ran from the date of the insurer's breach.  *Id.* at 799.  However, in doing so, the court noted that "the insurer can protect itself from claims that are remote in time by including explicit, unambiguous time limitations in its insurance contracts."  *Id.* at 800.

*Grayson* is therefore distinguishable from the instant case.  Plaintiff's insurance policy included an explicit time limitation on suit, and no such provision was at issue in *Grayson*. Further, as defendant notes, Nevada courts have specifically condoned suit limitation provisions in analogous cases.  *See Clark*, 598 P.2d at 629; *Davis v. State Farm Fire and Cas. Co.*, 545 F. Supp. 370, 371 (D. Nev. 1982).  For these reasons, the court finds that the limitation provision is enforceable.

b.   Waiver and prejudice

Plaintiff claims that defendant waived its late notice defense.  (Doc. # 69).  It is not clear whether plaintiff intended to make this argument with regard to the limitation provision, but such an argument would fail.  *See Havas v. Atlantic Ins. Co.*, 614 P.2d 1, 1-2 (finding timeliness defense was not waived where insured signed non-waiver release through which insurer reserved all defenses); *Las Vegas Metro. Police Dep't v. Coregis Ins. Co.*, 256 P.3d 958, 961 n.3 (holding late notice defense was not waived where included in first denial letter).  Because defendant's

James C. Mahan
U.S. District Judge

- 10 -

1    communications to plaintiff and Perini were accompanied by a reservation of rights, defendant

2    did not waive any timeliness defense.  (Docs. # 68-13, 68-17).

3            Plaintiff also conflates the legal standards applicable to the "action against company" and

4    "requirements in case of loss" provisions.  Plaintiff argues that even if plaintiff's notice was late,

5    this did not prejudice defendant.  (Doc. # 71).  The notice-prejudice rule is distinct from the

6    contract's twelve-month limitation provision.  *See Sullivan v. Allstate Ins. Co.*, 964 F. Supp.

7    1407, 1412 (C.D. Cal. 1997) (finding that limitation provision is distinct from notice provision

8    and requires only passage of time to bar suit).

9            Defendant does not have a burden to show prejudice from plaintiff's failure to comply

10   with the limitation provision.  Accordingly, prejudice is not at issue, and the limitation provision

11   will bar suit if plaintiff exceeded the twelve-month period.

12                                        c.   Date of discovery

13           Plaintiff next argues that the limitations provision does not bar the instant suit because

14   plaintiff did not discover the full extent of damage until it performed a comprehensive survey in

15   2008.  (Doc. # 71).  Plaintiff reasons that by the time it discovered the full extent of its loss, the

16   limitations period had already been tolled by Perini's notice to defendant.  Plaintiff therefore

17   contends that its suit was timely because it was filed within one year of the date the claim was

18   denied.

19           Plaintiff concedes that it first "became aware that there was significant scratch damaged

20   [sic] was in the fall of 2007."  (Doc. # 69).  Defendants point to evidence that plaintiff

21   documented substantial damage in October 2007.  (Doc. # 68).  Nevertheless, plaintiff argues

22   that the limitations period did not begin to run before denial of its claim, because the full extent

23   of the damage was not known at that time.  (Doc. # 71).

24           Plaintiff cites no case law in support of its contention that "the loss or damage which

25   gives rise to the claim" means only the full extent of the loss that plaintiff eventually discovered.

26   (Doc. # 68-2).  Plaintiff contends that "[t]he discovery of the loss or damage must bear some

27   relationship to the claim that Allianz seeks to have barred," but fails to show how the damage

28   discovered in October 2007 is unrelated to the instant claim.  (Doc. # 71).

**James C. Mahan**
**U.S. District Judge**

1    Plaintiff also suggests that it would be unreasonable if the limitations period began

2    running in October 2007 because "a claim such as the one in this case could be barred 12 months

3    after the insured discovered any single window to be scratch [sic], even if it did not become

4    aware of other scratch damaged windows that in the aggregate constitute the claim until more

5    than one year later." (Doc. # 71).

6    However, the alternative interpretation proves problematic.  Under plaintiff's theory, a

7    claimant could wait years after learning of substantial damage to bring a claim, until that party is

8    satisfied that it has discovered the "full extent of damage."  The insurer could remain liable

9    despite having had an inadequate opportunity to timely investigate the damage and its causes.

10    Further, relevant case law indicates that October 2007 is properly considered the date of

11    discovery here.  *See Jackson v. State Farm Fire & Cas. Co.*, 835 P.2d 786, 788-89 (Nev. 1992)

12    (holding that 12-month limitation period is triggered on the date that a reasonable insured should

13    know of appreciable damage and understand the duty to notify); *see also Sullivan v. Allstate Ins.*

14    *Co.*, 964 F. Supp. 1407, 1412-13 (C.D. Cal. 1997) (finding that limitations period begins running

15    even if insured does not know that the loss is covered or exceeds the deductible); *Stephens v.*

16    *Allied Ins. Co.*, No. C 06-01019 CRB, 2006 WL 3290582, at * 7 (N.D. Cal. Nov. 13, 2006)

17    (stating that limitations period begins to run when "any damage becomes reasonably apparent,"

18    even if extent is unknown).

19    Based on the foregoing, the court finds that the policy's limitations period began to run in

20    October 2007.  As the parties acknowledge, this period was then tolled from the date of Perini's

21    notice to defendant through the date that defendant denied plaintiff's claim.  Because the total

22    period attributable to plaintiff exceeds one year, the court finds that the limitations provision bars

23    plaintiff's claims under the contract.

24    d.  Scope

25    Plaintiff argues that the 12-month limitation period, if it has been exceeded, bars only

26    plaintiff's breach of contract claim.  (Doc. # 71).  Plaintiff contends that because the provision

27    bars untimely suits "for the recovery of any claim under this Policy," it is inapplicable to

28    plaintiff's bad faith and statutory claims.  (Doc. # 71).

**James C. Mahan**
**U.S. District Judge**

- 12 -

1    Plaintiff is correct that a common law bad faith claim is not subject to the limitations

2 provision. "The insurer's duty to deal in good faith is an obligation imposed by law, it does not

3 arise from the terms of the insurance contract." *Davis v. State Farm Fire and Cas. Co.*, 545 F.

4 Supp. 370, 372 (D. Nev. 1982) (citing NRS § 11.190) (finding 12-month limitation provision

5 inapplicable to bad faith claim).

6    Similarly, plaintiff's claims under the Nevada Unfair Claims Practices Act are subject to

7 the three-year statute of limitations for "[a]n action upon a liability created by statute." *See* NRS

8 11.190(3)(a); NRS 686A.210, *et seq.*

9    The court therefore finds that only plaintiff's breach of contract claim is barred by the

10 policy's 12-month limitations period. Accordingly, the court will grant summary judgment for

11 defendant on plaintiff's breach of contract claim, and will examine plaintiff's remaining claims

12 separately.

13    ii.    Breach of the implied covenant of good faith and fair dealing

14    Plaintiff moves for summary judgment on its claim for breach of the implied covenant of

15 good faith and fair dealing. (Doc. # 69). Plaintiff argues that defendant acted in bad faith by

16 accepting the results of a biased investigation into the causes of damage rather than conducting

17 its own investigation. (Doc. # 69). In its response, defendant argues that it is entitled to

18 summary judgment on this claim because plaintiff provides no support for its bad faith

19 allegations. (Doc. # 70).

20    In Nevada, "[e]very contract imposes upon each party a duty of good faith and fair

21 dealing in its performance and execution." *A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 784 P.2d 9,

22 9 (Nev. 1989). This implied covenant requires that parties "act in a manner that is faithful to the

23 purpose of the contract and the justified expectations of the other party." *Morris v. Bank of Am.*

24 *Nev.*, 886 P.2d 454, 457 (Nev. 1994) (internal quotation marks omitted).

25    In order to prevail on this claim against an insurance company, a plaintiff must

26 demonstrate: (1) the insurer denied or refused to pay the insured's claim; (2) without any

27 reasonable basis; and (3) the insurer had knowledge or awareness of the lack of any reasonable

28 basis to deny coverage, or the insurer acted with reckless disregard as to the unreasonableness of

James C. Mahan
U.S. District Judge

1   the denial.  *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996); *Schumacher v. State*

2   *Farm Fire & Cas.*, 467 F. Supp. 2d 1090, 1096 (D. Nev. 2006).

3          An insurer is not liable for bad faith so long as it had a reasonable basis to deny coverage.

4   *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co.*, 863 F. Supp. 1237, 1249 (D. Nev. 1994)

5   (refusing to find bad faith where insurance company investigated damage and requested

6   documents, despite insured's argument that investigation was incomplete).  "Nevada's bad faith

7   cases do not support [the] view that an insurer who has made a legitimate investigation of a

8   claim must continuously track down subsequent theories of coverage proffered by the insured."

9   *Id.*

10         Plaintiff fails to show a genuine issue of material fact as to this claim.  Defendant has

11  provided evidence that it investigated plaintiff's claim.  Plaintiff does not support its allegations

12  that defendant's grounds for denying coverage were "pretextual."  (Doc. # 69).  While plaintiff

13  claims that defendant ignored plaintiff's theories of the damage causation, the evidence shows

14  that defendant's expert discounted these theories based on his own review of the evidence.  (Doc.

15  # 69-41).

16         The court finds that defendant's basis for denying plaintiff's claim was not unreasonable.

17  Further, plaintiff provides no evidence demonstrating that defendant knew its actions were

18  unreasonable.  *Cf. Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (Nev. 1998) (citing

19  substantial evidence supporting bad faith, including evidence tampering, expert opinions that

20  investigation was incomplete and violated company's own policies, and investigator's own

21  admission of report errors known and ignored by company).  For these reasons, the court will

22  grant summary judgment in favor of defendant on this claim.

23                    iii.    Nevada Unfair Claims Practices Act

24         Plaintiff's cause of action for violations of Nevada's Unfair Claims Practices Act, NRS

25  686A.310, is based upon defendant's allegedly improper investigation and denial of plaintiff's

26  claim.  (Doc. # 1-1).  Plaintiff specifically contends that defendant violated Nevada Revised

27  Statute 686A.310(1)(e) and (1)(f).  NRS 686A.310(1)(e)-(f).

28  . . .

**James C. Mahan**
**U.S. District Judge**

NRS 686A.310(1)(e) classifies "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear" as an unfair practice.  Further, NRS 686A.310(1)(f) provides that "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered," is an unfair practice.

Plaintiff argues that defendant violated NRS 686A.310(1)(e) by waiting over two years to issue a denial of coverage from the date that it was informed of a potential multi-million dollar claim.  (Doc. # 69).  Plaintiff contends that rather than settling the claim, defendant spent two years developing a pretextual basis on which to deny coverage.  Plaintiff believes that defendant ignored conflicting evidence in order to avoid coverage.  (Doc. # 69).

Similarly, plaintiff asserts that defendant is liable under NRS 686A.310(1)(f) because defendant "refused repeated requests for reconsideration and refused to negotiate despite evidence that at least a portion of the claim was covered."  (Doc. # 69).

Plaintiff fails to provide any evidence to support its allegations for this claim.  By contrast, as discussed above, defendant provides substantial evidence that it diligently investigated plaintiff's claim.  Defendant hired an expert who spent three weeks examining the damage.  When plaintiff objected to this expert's findings, defendant submitted a supplemental report and explanation.  Defendant also submitted document requests to plaintiff and Perini.  (Doc. # 68-17).

Defendant eventually concluded that plaintiff's claim was not covered.  Therefore, based on its investigation and findings, defendant found settlement inappropriate.  While violations of the Nevada Unfair Claims Practices Act do not require bad faith, the court's analysis above is indicative here.  Plaintiff does not show that defendant's conclusions were unreasonable in light of the evidence.  As a result, the court cannot find that defendant's liability for plaintiff's claims was "reasonably clear."  *See* NRS 686A.310(1)(e).

Similarly, plaintiff offers little evidence in support of its claim for a violation of NRS 686A.310(1)(f).  Defendant is not liable for compelling plaintiff to institute litigation simply

James C. Mahan
U.S. District Judge

1    because defendant denied plaintiff's claim.  As previously stated, defendant's denial of plaintiff's

2    claim was not unreasonable.

3            Accordingly, the court finds no genuine dispute of material fact with regard to this cause

4    of action.  Plaintiff has failed to cite or include any authority or evidence supporting its claim for

5    a violation of the Nevada Unfair Claims Practices Act.  Accordingly, summary judgment will be

6    granted in favor of defendant on this claim.

7            Because the court finds no genuine issue of material fact on any of plaintiff's causes of

8    action, it will grant summary judgment to defendant on all three claims.  In light of this finding,

9    the court finds it unnecessary to address the parties' other arguments.

10   **IV.    Conclusion**

11           Accordingly,

12           IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's motion for

13   summary judgment, (doc. # 68), be, and the same hereby is, GRANTED.

14           IT IS FURTHER ORDERED that plaintiff's motion for summary judgment, (doc. # 69),

15   be, and the same hereby is, DENIED.

16           IT IS FURTHER ORDERED that plaintiff's motion to strike, (doc. # 72), be, and the

17   same hereby is, DENIED.

18           IT IS FURTHER ORDERED that plaintiff's motion to strike, (doc. # 75), be, and the

19   same hereby is, DENIED.

20           IT IS FURTHER ORDERED that defendant's motion to strike, (doc. # 78), be, and the

21   same hereby is, DENIED.

22           IT IS FURTHER ORDERED that plaintiff's motion to exclude expert testimony, (doc. #

23   80), be, and the same hereby is, DENIED.

24           The clerk shall enter judgment accordingly and close the case.

25           DATED December 24, 2014.

26

27    _____

28    UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 16 -